Good morning, and may it please the Court. Dawn Flores-Oster, on behalf of the appellants and the defendants. You're talking fairly softly. Can you hear her okay, Judge Schroeder? Does she need to speak up a little bit? Just speak up a little bit, okay? Certainly, Your Honor. Pardon me. Dawn Flores-Oster, appearing on behalf of the appellants and the defendants. If it's acceptable to the Court, the defendants would request to proffer their argument today in two parts. The first part would be the question of the Court's ability to entertain this interlocutory appeal in the first instance, and the second question will be the application of the Qualified Immunity Doctrine. We know from three principal cases, one of them being the Supreme Court case of Mitchell v. Foresight, the case of Kennedy v. City of Ridgefield, and the Rodriguez v. City of Los Angeles case. Those are Ninth Circuit cases. Those cases all indicate that an appellant has a right to be before the Ninth Circuit if, in fact, the appeal only challenges the purely legal question of whether or not there was sufficiently clearly established law for the determination as to whether or not qualified immunity would apply. Okay. So what's your best case supporting jurisdiction here? And I think what the other side was claiming, that you didn't present the facts in the light most favorable to the plaintiffs, and therefore we should dismiss the appeals. So what's your best case? The best case would be, I would point the Court to the opening brief at pages 13 and 14, the replacement brief at the reply 13 through 17. The cases that I just cited all principally stand for the same proposition, Your Honor, that as long as we are only presenting a question of to the Court, then it is acceptable for this interlocutory appeal to be before the Court. I believe that the plaintiff may have mistaken the proposition that defendants represented the statement of facts in the opening brief with the question of whether or not those facts were lied upon for the purposes of the appeal. In no uncertain terms, and we have repeatedly stated that throughout the course of the briefing, that there was a problem with us perhaps asking the Court to make an adjudication of facts or taking the position that there were sufficient facts to support the Court's holding. That is not at issue here. Well, sometimes it can seem confusing because I'm just going to say hypothetically, as we haven't conferenced on this, so I don't know where the Court's going to come out on this, and I can only speak for myself tentatively. I think you have a bit of a problem on the excessive force in the sense that there do appear to be some disputed facts over whether the car was going backwards. Now, we can't make that factual determination here. I don't think that necessarily defeats our jurisdiction, but it would defeat the qualified immunity on that issue, because if taken the facts most favorably to the plaintiffs, I'm going to call them here, who are now the appellees, that they're taking the position that the car wasn't backing up, it wasn't a threat. Now, the officers present different testimony, and there's also some difference of testimony between the officers that were shooting and another officer that ended up on the scene. I don't know how I could resolve that here. I still think I could have jurisdiction to decide the issue, but I don't know how I can resolve those disputed facts. I don't know, Your Honor, that there are actually disputed facts that are being presented by the appellants here. Well, you have one officer saying they did not see the taillights, okay? You have two saying they could see the car backing up. You have, and they say that there was, they were bumped and they were thrown back. There's also testimony, if I'm looking at the entire record, that you, and I know my car is this way too. My car, a light will come on and tell me if someone's bumped me, okay? Another judge backed into my car in the parking lot, in the judge's parking lot. I get in my car and it says someone's bumped you. There was no damage, but it could show a collision. You have an expert saying that didn't, that doesn't show that there was a collision. So if there wasn't a collision, if they believe that witness, then they might believe that the car wasn't backing up. So I just don't see how we can resolve all of those issues. Your Honor, during the course of oral argument, and this is out at footnote nine of document, docket 103, which is the court's order on the summary judgment motion. The plaintiff admitted that the car was moving backwards. Quite frankly, that is the only fact on which the appellants rely when arguing before the court. The question of whether or not there was a collision. Well, the plaintiff's deceased. I mean, the actual person driving the car. So he didn't admit he was back, that he wasn't, he didn't admit he was backing up, right? Certainly not. But counsel, during the course of oral argument, did do that. The court, the district court, inquired of counsel whether or not there was a question regarding the reversal of the car. And counsel admitted, and we certainly deal with this in the opening brief and in the closing brief, what did counsel say in admitting? I mean, this testimony from the two officers who did the shooting is pretty dramatic. That is to say that the backup lights came on, the wheels spun, gravel was spit out, bumped the patrol vehicle, the patrol vehicle was pushed one to two feet in reverse. I mean, that's different from saying, well, yes, the car might have backed up a little. I mean, so what precisely did the lawyer say? Precisely, your honor, plaintiff's counsel indicated that the car moved backward. There was some colloquy between the district court and counsel as to whether that was an intentional act or whether the car was in reversed, that was not resolved. And we do know that afterwards the car was discovered not in reverse, it was in park. Correct, correct. There was no collision. There are some, pardon me, there's some photographs indicating the proximity of the patrol car to the vehicle that the decedent was operating at the time. So we know that it was close. But the question of whether or not there was dirt being drawn up or the question of the speed, I know there was some evidence that was used by plaintiffs to support the proposition. To come back to my question, what precisely did the lawyer say? He said that the car was moving backwards and then there was some colloquy between the court. And that's all he said? That's essentially all and that's all that defendants or appellants are relying on here. All the other questions that your honor has brought up or potential issues of fact are not necessary to the adjudication of this case. It's so telling that the district court did not, in analyzing the qualified immunity question, separate out what was a disputed fact with what was actually the question that was before the court, which was the application of qualified immunity and whether there was a robust amount of cases that would support the court's reliance on cases such as Acosta and the rest of the cases that the district court relied on. That is really the focus of this of appellant's appeal, as to whether or not there was clearly established law that would have directed the deputies to know exactly when there was a cessation of activity. It's plaintiff's position that once the car, the Buick, the car the decedent was operating, struck the mailboxes, that that was the end of it. And that we can rely on cases such as Acosta to determine the state of the law as it existed at the time. But the cases before this, this case before the court today, is much more nuanced, nuanced than that. There was a... Doesn't it matter though? Okay, obviously, let's say, let's just say it's not disputed that the officers thought they were in danger, that their lives were in danger. But the test isn't subjective, is it? It's what would an objective officer, what would a reasonable officer have thought, right? So doesn't it matter whether the car was just rolling a little bit, or whether it was accelerating, whether they believe the plaintiff's definition as to why it moved, or whether they believe the officers? And we can't make that determination here. It is important to note, Your Honor, that the... I believe it's undisputed that the two deputies were behind the A-frame, which we all agree was the most safest position for the officers to be at at the time of the shooting. I think as I reviewed this and getting ready for oral argument today, I think there was perhaps an over-reliance on the proposition that the... Does it matter whether the car was just rolling, or whether it was going faster? No. You're saying a car, if it was rolling, that every officer would have thought that was reasonable to shoot? Certainly not, certainly not, certainly not. It's the combination of the high-speed chase that had taken place previously, along with the fact that there was no formal cessation, maybe formal isn't the correct word. Well, that may be why you win at trial, but the analysis for qualified immunity. I want to take you to another issue. I think we understand your position, and I'm just... The other two, there's some 14th Amendment plans.  And I'm having a hard time seeing any evidence, and that's a subjective test. I'm having a hard time... The district court said the officers were not entitled to qualified immunity, because the only thing I found in the record is, I'm going to shoot. I'm going to shoot, or whatever. So how does that show that there was anything other than a law enforcement issue here? Well, I would agree with Your Honor. There was no evidence that was presented that indicated there was activity that shocked the conscience, if I understand Your Honor's question exactly. Well, is there any other evidence besides, I'm going to shoot? Because the logical inference when that, if you're standing next to another officer that we know, and they're both unloading their guns, you wouldn't... If you're going to say, I'm going to shoot, the logical inference to me would be, you don't want the other officer to go charging up to the car so that you shoot the other officer. But I don't see anything in the record that they know each other, that there's any sort of grudge against this particular defendant. So I'm going to ask the other side that, so get ready for that. Do you want to save any time for rebuttal? I do. I've got two minutes left. I'd like to save that for rebuttal, Your Honor. Okay. Do either of you have any questions of a balance lawyer at this time? I'm good, thank you. Okay. You can reserve the balance. Thank you. Good morning. Good morning, Your Honors. Kaveh Nawab, I please the court. I'm here on behalf of plaintiff's appellees. I think this court and courts throughout the nation, as well as the Supreme Court, have repeatedly and consistently held that for an officer to use deadly force, there must be imminent harm. And as this court was alluding to just now, the facts just don't state that. We have numerous facts in dispute, and this goes to the heart of the jurisdictional issue. There are numerous facts in dispute. Now in the reply brief, the appellants conceded that they're not relying on what was stated here to be the dramatic statements by the officers, that the Buick reversed, hit their vehicle, tires spinning, reverse lights on, push their vehicle back, both of them lost their footing, then they shot. That was the justification for the shooting. What do we know? We know that there was no collision because they're on... I think I went through all of that. I mean, you may not win a trial, but I didn't hear anything that said that there aren't disputed facts. But I still think we have jurisdiction tentatively. I'm saying that because just because there are some disputed facts, it doesn't mean I can't look at everything here and say, okay, I give you all inferences, and all inferences are that the car was rolling back slowly or whatever, that there wasn't a collision, and it's up to a jury to decide whether a reasonable officer would face with the circumstances. And they're going to have to decide if they believe the officer said trial too. Absolutely, Your Honor. And I don't know whether they're going to or not. That may be the case, but I think this is a case that needs to be decided by the trier of fact, which is the jury. They need to see all of the evidence and look to decide whether at the moment of the shooting, there was an imminent harm that the officers were facing. That is the common thread throughout all use of force cases. And here... So I see excessive force here. I see this as being the 14th Amendment claims. I see no evidence of that. And I'm not... Those are before us too. So convince me, you know, I'm... And that's what the district court said. I'm going to shoot creates a triable issue. Well, Your Honors, if I may speak to that, I think that under the purpose to harm standard, and the court and the district court stated that it goes beyond just I'm going to shoot. Of course, that was one part of it. But the other part of it is that there might have been some kind of... Grudge may be the right word to use here or not, but because of the police chase that at the moment when the officers said, I'm going to shoot, there was no imminent harm. And if the jury believes there's no imminent harm, then they can easily also find that there was a 14th Amendment violation here. Because if you look at the totality instance, if the officers are not under an imminent harm and the officer says, I'm going to shoot, when there's no reasonable officer that believes there's an imminent harm, then that can be enough to satisfy the purpose to harm standard under the 14th Amendment. So what's the standard under the 14th Amendment? Some sort of egregiousness? How do we articulate that standard? Well, there's the shocks to conscience, there's the deliberate indifference. And I would argue, and I think the evidence here does demonstrate that there was time. I mean, the officers pull over, they put their car in park, they get out, the Buick is there. And whether it rolled slowly or moved, it was still in park at the time of the shootings. And so the officers, if they have a police chase that may have just ensued, but the chase had come to an end. And that's based on Deputy Lopez, who arrived mid-shooting, didn't see the reverse lights, didn't see a collision, didn't see tire spinning. And in fact, he testified when he got out of his car as the shootings unfolding, he didn't think there was an imminent harm. Now, if you take all of that evidence, when a jury's hearing that- He didn't think he was. Well, that's true, but he also- That's different than what the officer's perspective. He didn't think he was in imminent harm. That's what it shows, and that's why- So he isn't charged with excessive force here. No, he's not, Your Honor. But I think it's informative for the jury. And at the time that he pulled up, most of those facts that the officers that are here, that are defendants here, they've made certain specific statements under oath. And then you have an officer who's there, has a clear view of the Buick and disputing all of that and says, well, I didn't shoot because I didn't think there was imminent harm to me. Do they know your client, the deceased man? Did they know him? No. There's no indication of that? There's absolutely no evidence of that. There is evidence that they observed a vehicle violation or infractions, a couple of them, possibly. They call it in. There is evidence that a chase ensued, that your client didn't yield and was going up to 85 miles an hour in an area that wasn't- Well, there's no 85 mile an hour speed limit anywhere, but it sounds like it was residential. There were other infractions that were completed. They called for backup, and this all happened over a short period of time. So if they really just wanted to hurt the guy, why did they call in for backup? Why did they- I'm in a shoot. I just, I don't see how that's enough. Well, if I may speak to that, that's true. There was some traffic violations. I mean, the pullover initially was for tinted windows and a temporary license plate. The car was registered to him. There was no issues with- Your client had a kid in the car and took the officers on an 85 mile an hour chase. Understood, Your Honor. So I just don't see that, I can see where arguably it was a chase gone bad, and that a jury could come back and say that the officers used excessive force. But I don't see anything in the record that indicates that this was anything other than a police enforcement thing that a jury might think excessive force was used, but not that they were picking on your client. Well, Your Honor, respectfully, I don't believe the standard is picking on the client. I think the bottom line is, I mean, one piece of evidence that we haven't spoken about- There's got to be a subjective intent to do that it's other than a law enforcement purpose, right? That's accurate. And I think at the end of the day, what the evidence shows is that he actually braked before the stop. I think 68 feet of braking. So he was, from our perspective, perhaps a jury will see an individual who was surrendering. There was no imminent harm. And then the officers get out and within a short period of time, I'm going to shoot when there's no real harm and kill the individual. And I think a jury, if they find that there's no imminent harm, can also find that the officer was acting with either deliberate indifference or the purpose to harm here. And I think the evidence does- Let me ask you a slightly different question. Is there a different remedy depending on whether this is an excessive force case or whether this is an intent to kill case? Not necessarily a different remedy, but under the 14th Amendment, the parents who are individuals, they have standing here as well too, but not necessarily a different remedy ultimately for the plaintiffs. There is a punitive damages claim as well here too, but that wasn't briefed. So I do think though, under the evidence here, a reasonable officer would not have shot. And because of those facts, a jury could find that the officers acted with purpose to harm. Okay, but let me, if we're going to deny them qualified immunity on that, what is your best case that establishes that this was, that the right to harm was clearly established? What is your best case? I believe the Wilkerson case, Your Honor, sheds light on that. I think that's a key case here. I believe there was a police chase in that case as well too. And so there's a number of 14th Amendment- You have the two prongs to the qualified immunity. The first has got to be clearly established. And if you don't have a case that clearly establishes it, then qualified immunity can be granted on the second prong, correct? That's accurate, Your Honor. But I do think the Wilkerson case is a key case there, where the court in that case, this court discussed the purpose to harm standard and the shocks, the conscience, the deliberative indifference. But I think the deliberative indifference, sometimes there's a timing issue. And again, we do have that here because there was time to deliberate. And that's the key with the, I'm going to shoot. The officer thought he was not imminent threat and still shot 26 shots through the back windshield of this vehicle when they were not faced with an imminent harm of danger. And I think a jury can find a 14th Amendment violation under those facts. Because that evidence is the time to think about what actions the officers are going to take. And I think that's key in the analysis here under qualified immunity, under the excessive force factors here as well. And I want to just discuss one other thing that was brought up with regards with what counsel during the motion for summary judgment stated with the reversal. Because appellants repeatedly in their briefing have state reversed the car, reversed the car, reversed. During the motion for summary judgment hearing, and this is in the stated, this was not a situation where Ruiz actually put the car in reverse and backed up. And so there was never a concession from the plaintiffs at the district court level that this car, that Mr. Ruiz put the car in reverse and slammed into the officers or reversed and accelerated to them. Now what we do know is again, the car hit the mailboxes, may have rolled back slightly. In those cases, Acosta, Tubar, for decades within this district have held that you cannot shoot at a slow moving vehicle and the officers are not under imminent harm. Now we know that the car after the shooting was finished was not in reverse. Was it in drive? It was in, it was not in drive. It was in neutral. It was in neutral. So it could have rolled back just on its own. Exactly. So we do know from the record that it was in neutral. Well, that's, that's, that's the because there's photographs taken and it does show that. Yeah. And so, and that's why it may have rolled back ever so slightly, but what evidence do we have? We know there was the, the recorder in the vehicle that captures vehicle collisions above five miles per hour, recorded no collision. There's no physical damage on either of the vehicles evidencing a collision. And so all the inferences when taken in the favor of the plaintiff here demonstrate that there was no imminent harm faced by the officers. And if they had time to deliberate, then the 14th amendment also applies as well. But give me the facts of Wilkerson. Wilkerson. I'm going to ask the other side to come back with it too. So tell me why that, but the officers, why it was a clearly established under these circumstances. I'm not mistaken. Wilkerson, your honor, is the case where the car was spinning and the officer was, there was one officer on one side, one officer on the other side, and the tires were spinning and one officer thought the other officer was about to get run over and shot into the vehicle and killed the driver. In that instance, the court just embarked on an analysis of the, of the 14th amendment and decided that, well, if the officer had time to contemplate here, that's the key analysis. That's the key analysis of whether the officers had time to deliberate. And I think based on the facts here. They say the officers had time to deliberate in the Wilkerson case? I don't believe the officers had time to deliberate because he could not see the other officer. The officer had fallen down on the ground. And so in that case, that's where the analysis was. But I think it sheds light on just what the analysis is here, which is the deliberate. Okay, so the facts don't really put the officers on notice here in that case, do they? Well, I think that the facts may not, but what we do know is the facts of the other vehicle cases, and that should have put the officers on notice here, which is that you cannot shoot into a slow moving vehicle. And that's excessive force. That's an excessive force situation. That is an excessive force situation. Okay, so give me your best case on a deliberate indifference or 14th amendment that says the officers were on notice saying I'm going to shoot, that they're denied qualified immunity on that. There's also a, well, I think the court has numerous times held that you don't have to have an exact similar situation. But in the court's order on the district court, there was white versus poly that the court relied on as well to determine whether or not there was a 14th amendment violation. And the court stated there, as discussed above, one possible interpretation of the facts of the defense were not in any real danger, but used deadly force and did so with an intent to harm. And so whether there's a specific exact case under the 14th amendment with the same facts, that may not be the case here. But we don't need a case with exactly the same facts. Well, it's obvious that they intended to harm. You don't shoot at someone with no intent to harm. But I'm having trouble differentiating the case in front of us from a sort of a garden variety excessive force case that we see all the time. If I may, if there's no imminent harm, as the facts from plaintiff's perspective demonstrate, if there was no imminent harm, then shooting 26 shots to the back window of a vehicle, that can be considered deliberate indifference, especially when you have the time to think about the shooting. And that's what's evidenced by the I am going to shoot statement. And so that's the key. If there was no harm, if there was no imminent harm, then shooting 26 shots in that manner through the back window of the vehicle can be evidence of deliberate indifference, shocking the conscience, and a purpose to harm. Those are the key aspects of a 14th amendment claim. And so I think that's where it is. And whether or not there's an exact case, I think that this court has numerous times said that there does not need to be an exact factual scenario. All right, your time's up. Let me find out if my colleagues have any additional questions of you. Apparently, there are no additional questions. Thank you. Thank you for your argument. Your Honor, don't talk till you get to the microphone. Pardon me, Your Honor. In the Wilkinson's case that plaintiff relies on for the 14th amendment, qualified immunity was applied. It wasn't not applied. I would also direct the court's attention to first, one. You're saying the court granted qualified immunity because under the factual circumstances there that it wasn't clearly established. Was it under the first or the second prong? I believe it was under the first prong, Your Honor, if I remember correctly. Okay. I would also point to the court's order again. That's at one, pardon me, ER 31, where the court essentially admits, for lack of a better term, the absence of case law that would establish the application of qualified immunity or not to the 14th amendment claim. So the court indicated that there wasn't sufficient case law just to establish that. Basically said, I can't find anything. Correct. That's right, Your Honor. Do you agree that your shift was in neutral? Yes, I do, Your Honor. I do. That then makes it consistent with rolling back a little bit. Correct. Defendants, appellants have no problem with that. I did not suggest to the court, at least I hope I didn't, that we believe that plaintiff's counsel indicated that the vehicle was in reverse. We simply indicated it was rolling backwards. And your argument is rolling backwards is enough to justify the shooting. That's correct, Your Honor. So that gives me the following question. You then conceded at least the possibility that the officers were lying. Well, I don't know that credibility is at issue here, that they were lying. I don't even know how to respond to that, Your Honor. The officers gave a very dramatic story. And you're saying, well, at least we're settled on the fact that it was rolling gently backwards. No, I'm only, it looks like my time is out. May I continue? Please. Certainly. I'm not suggesting that the, how should I say, that for purposes of qualified immunity, though the question of whether or not it was rolling backwards is sufficient, for purposes of determining whether or not there was a constitutional violation or use of excessive force in the first instance, then you would look at those facts. But I think the case law. But someone's was presented a threat to a reasonable officer. How can we decide that? We would look, Your Honor, at the case law that the Supreme Court has set forth about what level of specificity needs to be present in determining whether a case is of a robust consensus. So I understood the court to say earlier that tentatively it may appear that there may be jurisdiction to hear this matter, but we have to leap beyond that and look at what cases the court, the district court relied on when determining qualified immunity could not apply. They simply are not specific enough, and specificity is particularly important in the Fourth Amendment context. They were not specific enough to put these officers on notice that after a high-speed chase and, importantly, an inability to see inside the car. The windows were tinted. The officers could not see inside that vehicle. They could not determine how many people were inside. They could not determine if those individuals were armed. No ability to do that. That alone takes us out of the cases that the court relied on and claims counsel relied on when determining qualified immunity did not apply. All right. I think we understand both of your arguments. Thank you both for your argument. This matter will stand submitted today. Thank you.
judges: SCHROEDER, FLETCHER, CALLAHAN